## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LATIA S. JONES,

        Plaintiff,

        v.                                Case No.  07-2110-JWL

THE WET SEAL RETAIL, INC. and
ERMC II, L.P.,

        Defendants.

_____

### MEMORANDUM AND ORDER

Plaintiff Latia S. Jones filed this lawsuit asserting claims based on events that occurred when she was accused of shoplifting at the Arden B store in Oak Park Mall Shopping Center in Overland Park, Kansas.  She asserts claims for false imprisonment, battery, defamation, and negligence against the retailer, defendant Wet Seal Retail, Inc. d/b/a Arden B, and mall security, defendant ERMC II, L.P.  This matter is currently before the court on defendants' motions for summary judgment (docs. # 86 & #88).  As explained below, the court will grant these motions in part and deny them in part.  Specifically, the court will grant them to the extent that they are unopposed as to plaintiff's defamation and negligence claims against both defendants as well as her battery claim against defendant Wet Seal.  The motions are denied with respect to plaintiff's false imprisonment claim against both defendants and her battery claim against ERMC.

## STATEMENT OF MATERIAL FACTS[1]

On Saturday, July 22, 2006, plaintiff Latia Jones was shopping at Oak Park Mall with her sister and two children.  While at defendant Wet Seal's store called Arden B, she tried on a bracelet that was displayed in a jar by a cash register.  According to Ms. Jones, she removed the bracelet and placed it back in the jar.  But, one of the Arden B sales clerks, Mary Nelson, believed that she saw Ms. Jones walk out of the store with the bracelet.  Ms. Nelson informed the store manager, Katie Paprota.  Ms. Paprota followed Ms. Jones out into the mall common area and confronted her near or in another store, Nine West, asking Ms. Jones if she planned to pay for the bracelet.  Ms. Jones denied Ms. Paprota's accusations.  Ms. Paprota returned to Arden B and called mall security, defendant ERMC.  In the meantime, Ms. Nelson left the Arden B store to wait outside Nine West for mall security to arrive.

When Ms. Jones came out of Nine West, she was confronted initially by Ms. Nelson and at least one uniformed security guard, ERMC employee Paul McCann.  It is uncontroverted that Mr. McCann did not witness Ms. Jones shoplifting and that he relied solely on what he had been told by the Arden B employees.  Soon, Don Frankland, an off-duty police officer for the Overland Park Police Department who was in police uniform, arrived at the scene.  Additionally, three more uniformed ERMC mall security guards arrived

---

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party.

at the scene.  Mr. McCann and Officer Frankland asked Ms. Jones to come back with them to Arden B to discuss the matter, but she refused to cooperate and caused quite a scene. Eventually, Officer Frankland grabbed Ms. Jones' wrist and told Mr. McCann to "cuff her," Mr. McCann placed her in handcuffs, and the two escorted her to the mall security office.

Mr. McCann went back to the Arden B store to ask Ms. Paprota if she was going to press charges against Ms. Jones for shoplifting and Ms. Paprota informed him that she was not going to do so.  Mr. McCann returned to the mall security office and explained to Officer Frankland that Arden B was not going to press charges for shoplifting, but that he was still going to press charges against Ms. Jones for disorderly conduct.  Mr. McCann also decided to place a "barment" on Ms. Jones whereby she would not be permitted to return to the mall for a period of time.  To place this barment on Ms. Jones, he needed her identification information such as her name, address, phone number, and date of birth.  When he asked her for this information, she refused to provide it.  The security guards called the Overland Park Police Department.  The ERMC guards detained plaintiff for approximately forty-five minutes with her hands handcuffed behind her back waiting for the police to arrive.  While detaining Ms. Jones in the office, ERMC security guard Nicholas Sutterby uttered the phrase "white power" to her.  Also, Mr. McCann tried to take her picture while she was still in handcuffs, but she refused, bending her head downward.  It is ERMC's policy that a security guard who cannot get personal identifying information from a customer is permitted to call out the police to get the information.

3

When Overland Park Police Officer Deborah Swanson responded to the scene, she removed Ms. Jones' handcuffs. Officer Frankland advised Officer Swanson that "there were no known witnesses, nobody had actually seen her take anything, and there was no known camera footage." Officer Swanson investigated the matter and Ms. Jones cooperated fully, answering all of Officer Swanson's questions. Officer Swanson did not find sufficient evidence to believe that there was probable cause to charge Ms. Jones with causing a disturbance. Officer Swanson gave Mr. McCann the identifying information she had obtained from Ms. Jones. Mall security insisted that Ms. Jones provide her fingerprints before leaving. Officer Swanson thought this final demand was "very disrespectful" and she advised the guards that they were not entitled to her fingerprints. Mr. McCann then issued a "Ban Notice" to Ms. Jones informing her that she was banned from Oak Park Mall for three years and stating that she would be arrested for trespassing if she returned to the mall during that time period.

Based on these events, plaintiff asserts claims against defendants Wet Seal and ERMC for false imprisonment, battery, defamation, and negligence. Defendants now seek summary judgment on each of those claims against them.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all

4

reasonable inferences therefrom in the light most favorable to the nonmoving party. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Scott v. Harris*, 17 S. Ct. 1769, 1774 (2007)). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Libertarian Party v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### DISCUSSION

Defendants have moved for summary judgment on all of plaintiff's claims against them. Plaintiff concedes that summary judgment is warranted as to her defamation and negligence claims against both defendants, and also on her battery claim against defendant Wet Seal. To that extent, then, defendants' motions are granted as unopposed. The parties dispute whether summary judgment is warranted on plaintiff's false imprisonment claims against both defendants and her battery claim against defendant ERMC. For the reasons explained below, the court finds that plaintiff has raised genuine issues of material fact sufficient to withstand summary judgment on her false imprisonment claim and, in particular, defendants' asserted merchant's defense. Additionally, disputed issues of fact preclude summary judgment on her battery claim against defendant ERMC. Accordingly, those aspects of defendants' motions are denied.

### I.    False Imprisonment Claim Against ERMC

ERMC seeks summary judgment on plaintiff's false imprisonment claim based on the merchant's defense set forth in K.S.A. § 21-3424(c). The merchant's defense "is designed to protect a merchant and [its] agents or employees in situations where a suspected shoplifter

6

takes property of the store into his [or her] possession and has wrongfully taken or is about to wrongfully take the merchandise from the store." *Alvarado v. City of Dodge City*, 238 Kan. 48, 60, 708 P.2d 174, 183 (1985). The statute provides in relevant part as follows:

> Any merchant, or a merchant's agent or employee, who has probable cause to believe that a person has actual possession of and has wrongfully taken, or is about to wrongfully take merchandise from a mercantile establishment, may detain such person on the premises or in the immediate vicinity thereof, in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Such reasonable detention shall not constitute an arrest nor criminal restraint.

K.S.A. § 21-3424(c). This statute applies to civil actions for false imprisonment under Kansas law. *Alvarado*, 238 Kan. at 60, 708 P.2d at 183; *Codner v. Toone*, 224 Kan. 531, 533, 581 P.2d 387, 389 (1978).

ERMC contends that it is entitled to the merchant's defense because its security guards were responding to the scene as Arden B's agents inasmuch as they were acting based on information provided by Ms. Paprota and Ms. Nelson. In response, plaintiff argues that ERMC is not entitled to the benefit of the merchant's defense because (1) material issues of fact exist concerning a lack of probable cause to justify the initial detention of plaintiff for shoplifting, (2) material issues of fact exist regarding the reasonableness of the detention, and (3) the defense was lost once Mr. McCann was advised that Arden B was not going to press shoplifting charges. The court agrees that disputed issues of fact exist regarding each of these issues.

Probable cause existed for the initial detention if the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information

7

were sufficient in themselves to warrant a person of reasonable caution to believe that an offense had been or was being committed. *Alvarado*, 238 Kan. at 63, 708 P.2d at 185. The existence of probable cause is a jury question where the facts are in dispute, but the issue becomes a matter of law where the undisputed facts demonstrate the presence or absence of probable cause. *Melia v. Dillon Cos.*, 18 Kan. App. 2d 5, 8, 846 P.2d 257, 260 (1993). Thus, in evaluating whether Mr. McCann and the other ERMC security guards had probable cause to believe that plaintiff had shoplifted from Arden B, at this procedural juncture the court takes only the facts on which there is no genuine dispute.

It is undisputed that ERMC guards were initially acting on information provided from Arden B employees, one of whom reportedly witnessed Ms. Jones shoplift from the store. Leaving aside the veracity of that Arden B employee, the critical point is that the sole relevant fact established by the summary judgment record is that mall security guards took action based only on the Arden B employees' accusations that they saw Ms. Jones shoplift from the store. The record also establishes that Ms. Jones repeatedly and emphatically proclaimed that she did not steal anything and no stolen item was ever found in her possession. And, Mr. McCann testified in his deposition that he did not ask the Arden B employees about the details of their observations of Ms. Jones, he did not check to see about any surveillance tapes, and the mall security guards did not return to the Arden B store to see if the bracelet was back at the store. The extent to which this additional information would have been readily available to ERMC personnel is unclear from the record. Under these circumstances, a genuine issue of material fact exists concerning whether ERMC personnel

8

possessed reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that Ms. Jones had shoplifted a bracelet. *See Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998) ("[P]olice officers may not ignore easily accessible evidence and thereby delegate duty to investigate and make an independent probable cause determination based on that investigation."); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1432 (10th Cir. 1984) (off-duty police officer acting as security guard lacked probable cause to arrest plaintiff for shoplifting by unreasonably refusing to interview cashier at scene who would have confirmed plaintiff had paid for allegedly stolen sunglasses), *vacated on other grounds sub nom.*, *City of Lawton v. Lusby*, 474 U.S. 805 (1985). Accordingly, the question of whether probable cause existed to justify the detention presents a question for the trier of fact. *Compare Hampton v. Dillard Dep't Stores, Inc.*, 985 F. Supp. 1055, 1060-61 (D. Kan. 1997) (security guard had probable cause sufficient to invoke merchant's defense where he had observed patron carrying item in her hand and looking around "as if to see if someone was watching her" and store employee had seen patron pushing item into jacket while in fitting room), *and Melia*, 18 Kan. App. 2d at 7-8, 846 P.2d at 259-60 (same, where store security had observed patron place item in shirt pocket and leave the store without paying for it), *with Hester v. Wal-Mart Stores, Inc.*, Case No. 03-2447-JWL, 2005 WL 2035062, at *7 (D. Kan. Aug. 22, 2005) (whether loss prevention associate had probable cause to stop suspected shoplifter was a jury question where he did not watch patron go through the checkout line and did not witness patron attempting to conceal any merchandise), *Williams v. K-Mart Corp.*, Case No. 91-2356-GTV, 1992 WL 396339, at *4-*5 (D. Kan. Nov. 7,

9

1992) (same, where merchant's employees did not actually observe patron take any merchandise), *and Alvarado*, 238 Kan. at 51, 62, 708 P.2d at 178, 184 (same, where security guard admittedly did not check with cashier to determine what items the suspected shoplifter had paid for).

Genuine issues of material fact also exist concerning the reasonableness of the detention. The merchant's defense statute permits detention of a shoplifting suspect "on the premises or in the immediate vicinity thereof, in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession." § 21-3424(c). Here, ERMC guards took plaintiff to the mall security office, and it is unclear whether this was in the "immediate vicinity" of Arden B. A rational trier of fact could also find that the detention was not done in a "reasonable manner" where she was placed in handcuffs when she presented no apparent physical threat to the security guards' safety. And, a rational trier of fact could find that a forty-five minute detention while waiting for the police to arrive was not a "reasonable period of time." Thus, the propriety of the scope of the detention is an issue that also must be resolved by the trier of fact.

Plaintiff also has presented disputed issues of fact precluding summary judgment on ERMC's asserted merchant's defense for the continued detention of Ms. Jones after Arden B informed Mr. McCann that Arden B did not intend to pursue shoplifting charges against Ms. Jones. A rational trier of fact could conclude that, at that point, ERMC was no longer acting as Arden B's agent so as to be entitled to assert the merchant's defense. Additionally, the summary judgment record viewed in the light most favorable to Ms. Jones establishes

that, at that point in time, ERMC was no longer detaining Ms. Jones "for the purpose of investigating the circumstances of [her alleged] possession" of stolen merchandise from Arden B.  Instead, the purpose of the detention had become pressing disorderly conduct charges against her and/or seeking private identification information from her in order to issue a ban notice.  To the extent that ERMC continued to detain her for either or both of those purposes, the detention was not within the scope of the merchant's defense.  Thus, plaintiff has presented triable issues of fact sufficient to withstand summary judgment on ERMC's asserted merchant's defense.

## II.    False Imprisonment Claim Against Wet Seal

Wet Seal argues that it is entitled to summary judgment on plaintiff's false imprisonment claim because the Arden B employees did not restrain Ms. Jones' personal freedom by threatening or touching her, but instead they stood silently by while ERMC's security guards handcuffed her and took her to the mall security office.  Under Kansas law, a plaintiff seeking to recover for false imprisonment must prove that he or she was "unlawfully caused" to be restrained by the defendant.  *Thompson v. Gen. Fin. Co.*, 205 Kan. 76, 87-88, 468 P.2d 269, 280 (1970).  It is not necessary that the defendant directly ordered the restraint or was even present at the time, but it must appear that the defendant instigated the restraint, assisted in it, or by some means directed, countenanced, or encouraged it.  *Id.*; *Thurman v. Cundiff*, 2 Kan. App. 2d 406, 407, 580 P.2d 893, 897 (1978).  The defendant must have taken some active part in bringing about the arrest in the sense of having engaged in an affirmative act which induces the restraint.  *Thurman*, 2 Kan. App. 2d at 407, 580 P.2d

11

at 897; *see also Kelly v. Bank Midwest, N.A.*, 161 F. Supp. 2d 1248, 1258 (D. Kan. 2001). In this case, accepting the evidence submitted by plaintiff as true, Ms. Nelson falsely accused her of stealing and that information was conveyed by her and/or Ms. Paprota to mall security guards who detained Ms. Jones in reliance on that accusation. Furthermore, they did not follow through with these accusations by pressing charges for shoplifting, thus raising skepticism about the veracity of the accusation. Under these circumstances, the court cannot say that the Arden B employees did not take an active part in the detention of Ms. Jones as a matter of law. *See, e.g.*, *Hunter v. The Buckle, Inc.*, 488 F. Supp. 2d 1157, 1176-77 (D. Kan. 2007) (denying summary judgment on false imprisonment claim against defendants that gave false information to police officers who detained plaintiffs in reliance on that information); *Thompson*, 205 Kan. at 88, 468 P.2d at 280 (upholding a verdict for the plaintiff where the defendants had instigated, assisted, and countenanced the plaintiff's arrest by not making a full and truthful disclosure of the facts to the county attorney, including the signing of a false affidavit).

Wet Seal also contends that it is entitled to summary judgment based on the merchant's defense because its employee, Ms. Nelson, saw plaintiff try on a bracelet and leave Arden B without paying for it. It is true that personal observations of a shoplifter's actions "are sufficient to create probable cause to detain." *Melia*, 18 Kan. App. 2d at 7-8, 846 P.2d at 259-60. But, the existence of probable cause is a jury question where the facts are in dispute. *Id.* at 8, 846 P.2d at 260. If the trier of fact believes Ms. Nelson's testimony about her observations of Ms. Jones, then Arden B had probable cause to detain so as to

12

invoke the merchant's defense and Wet Seal will be absolved from liability for false imprisonment.  But, at this procedural juncture, the court must view the summary judgment record in the light most favorable to Ms. Jones.  Viewed as such, Ms. Nelson's testimony that she saw Ms. Jones take the bracelet is controverted because Ms. Jones has always maintained and continues to maintain that she did not take the bracelet.  Accepting as true the fact that Ms. Jones did not take the bracelet, then, Ms. Nelson could not have seen her take it.  Thus, this disputed observation cannot serve as a valid ground for granting summary judgment.  *Cf. Melia*, 18 Kan. App. 2d at 7-8, 846 P.2d at 259-60 (trial court erred in denying directed verdict on false imprisonment claim because merchant was entitled to merchant's defense; the evidence at trial was uncontested that the store security guard had observed plaintiff remove tobacco from a store display, place it in his shirt pocket, then leave the store without paying for it, thus giving the security guard probable cause to detain even though the plaintiff's failure to pay for the tobacco may have been an innocent mistake).  Accordingly, Wet Seal's motion for summary judgment is denied.

**III.    Battery Claim Against ERMC**

ERMC argues that it is entitled to summary judgment on plaintiff's battery claim because its personnel did not intend to injure Ms. Jones.  In support of this argument, ERMC has submitted declarations from Mr. McCann and Officer Frankland stating that they did not intend to injure Ms. Jones in any way and ERMC cites a comment from the Kansas Supreme Court in *Baska v. Scherzer*, 283 Kan. 750, 156 P.3d 617 (2007), that "[t]he gravamen of a civil assault and battery is grounded upon the actor's intention to inflict injury."  *Id.* at 756,

156 P.3d at 622 (quotation omitted).  The court made this observation, however, in the context of making a distinction between the fact that assault and battery claims involve intentional conduct, whereas negligence claims involve unintentional conduct.  *Id.* The court does not read the Kansas Supreme Court's opinion in *Baska* as redefining the contours of a battery claim under Kansas law, as it is well settled that the "intent" required for a battery claim is an intent to bring about contact or apprehension of contact that is "harmful or offensive."  *Id.*; *Hackenberger v. Travelers Mut. Cas. Co.*, 144 Kan. 607, 62 P.2d 545, 547 (1936); *Williams v. Kearbey*, 13 Kan. App. 2d 564, 569, 775 P.2d 670, 674 (1989); *see also* Restatement (Second) of Torts §§ 13, 18 (1965) (defining battery in terms of intent to cause "harmful or offensive contact"); 6 Am. Jur. 2d *Assault and Battery* § 3, at 14 (1999) (explaining that battery is understood to include "harmful or offensive touching" resulting from an act intending to cause such contact).  Certainly, a rational trier of fact could find that a person with a reasonable sense of personal dignity would be offended by having her wrist grabbed and then being placed in handcuffs.  *See, e.g.*, *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208-09 (10th Cir. 2006) (reversing district court's grant of summary judgment on battery claim where record revealed that officers intended to cause an offensive contact by touching the plaintiff's arms and placing her in handcuffs); *Love v. Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988) (noting the acts of subduing and handcuffing are undoubtedly offensive to a reasonable sense of personal dignity, and observing that "[t]he contact involved is plainly intentional; one cannot accidentally handcuff or subdue another"); *see also* Restatement (Second) of Torts § 19 (contact is considered offensive "if it offends

14

a reasonable sense of personal dignity"). Consequently, the conclusory declarations of Mr. McCann and Officer Frankland they did not intend to actually injure Ms. Jones do not entitle ERMC to judgment as a matter of law on this claim. Their actions could, unless privileged, constitute a battery.

ERMC also contends that the bodily contact with Ms. Jones was privileged. In support of this argument, ERMC cites *Daniels v. Dillard Dep't Stores, Inc.*, 881 F. Supp. 505 (D. Kan. 1995), where another judge in this court found that the defendant's security officers' warrantless arrest of the plaintiff was privileged where they had probable cause to lawfully arrest her for criminal trespass. *Id.* at 510-12. In response, plaintiff contends that ERMC's claim of privilege requires a finding of probable cause for ERMC's employees to stop and detain plaintiff for investigation of shoplifting, which is a disputed issue of material fact. Aside from the fact that the court does not entirely agree with the precise legal contours of the claim of privilege as addressed by the parties only briefly in their papers, suffice it to say that the summary judgment record is permeated with disputed issues of fact that would bear on the issue of whether the bodily contact was privileged. These disputed issues include, for example, the existence of probable cause to detain for shoplifting and/or another criminal offense, the nature and extent of Ms. Jones' allegedly disruptive behavior, and Mr. McCann's status as a privately employed security guard as compared to Officer Frankland's status as an off-duty law enforcement officer as well as their respective roles in the detention. Accordingly, ERMC's motion summary judgment on plaintiff's battery claim is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions for summary judgment (docs. #86 & #88) are granted in part and denied in part as set forth above.

**IT IS SO ORDERED** this 21st day of March, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
